**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ALI SAREINI,

     Plaintiff,      Case Number: 08-13961

v.             THOMAS L. LUDINGTON
             UNITED STATES DISTRICT COURT

DAVE BURNETT and
RADWAN MARDINI,      VIRGINIA M. MORGAN
             UNITED STATES MAGISTRATE JUDGE

      Defendants.

_____ /

**REPORT AND RECOMMENDATION**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT (Doc. No. 41)**

   This is a *pro se* 42 U.S.C. § 1983 action in which Plaintiff Ali Sareini, an inmate in the

custody of the Michigan Department of Corrections, alleges that Defendants violated his rights

under the Free Exercise Clause of the First Amendment to the United States Constitution and the

Religious Land Use and Institutionalized Persons Act ("RLUIPA"), by refusing to hold a separate

group religious service for Shia Muslim prisoners, refusing to provide Halal meals, not allowing him

to possess items central to the practice of his faith, and denying him the opportunity to observe

religious holidays.  This matter is before the court on Defendants Dave Burnett and Radwan

Mardini's motion for summary judgment.  (Doc. No. 41).  Plaintiff did not respond to Defendants'

motion and the time for response has lapsed.  For the reasons discussed below, the court

recommends that Defendants' motion for summary judgment be **GRANTED IN PART** and

**DENIED IN PART**.

1

**I. Background**

On September 15, 2008, Plaintiff filed a *pro se* class action complaint, on behalf of a class of prisoners, alleging that Defendants Dave Burnett and Radwan Mardini violated class members' rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*., the Equal Protection Clause, and the First, Eighth, and Fourteenth Amendments. (Doc. No. 1). Before his retirement, Defendant Burnett was employed as the special activities coordinator with the Michigan Department of Corrections ("MDOC"), at the central office in Lansing, Michigan. Defendant Mardini has been a chaplain at the Huron Valley Complex Men's Facility since 1999.

On December 30, 2008, this court recommended that Plaintiff's complaint be dismissed because Plaintiff sought class certification and, as a *pro se* prisoner, Plaintiff could not adequately represent the class. (Doc. No. 13). The district court accepted this court's recommendation but allowed Plaintiff to file an amended complaint. (Doc. No. 32).

Thereafter, on May 27, 2009, Plaintiff filed an amended complaint again alleging that Defendants violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*., the Equal Protection Clause, and the First, Eighth, and Fourteenth Amendments; this time Plaintiff sued Defendants in his personal capacity, not as a class representative. (Doc. No. 33).

Plaintiff, a Shia Muslim, has been incarcerated for 20 years in the Michigan state prison system. (Am. Compl. p. 3). During that time, he alleges that the Michigan Department of Corrections has restricted the practice of his faith. (Am. Compl. p. 3). Plaintiff alleges that the

MDOC violated his constitutional rights to practice his religion by refusing to recognize Shia Islam as a religious group, so that Shia Muslims could hold separate group services.  (Am. Compl. 3). Plaintiff further alleges that Defendants have violated his religious constitutional rights and his constitutional right to equal protection of the laws  by refusing to provide Halal meals, even though the prisons provide Kosher meals.  (Am. Compl. p. 5).  Plaintiff has also been denied admission into the Kosher meals program.  (Am. Compl. p. 5).  Plaintiff asserts that Defendants have denied him the right to possess certain religious items that are central to the practice of his faith, including the Miswak Stick, Attar (prayer oil), an Aqiq ring, a keffiyeh head scarf, and a prayer tablet.  (Am. Compl. p. 9).  Plaintiff also complains that Defendants have not honored Shia traditions during Ramadan and alleges that Defendants refuse to recognize Shia holidays and religious ceremonies. (Am. Compl. p. 12).

Presently before the court is Defendants' unopposed Motion for Summary Judgment.  (Doc. No. 41).

## II. Standard of Review

The United States Court of Appeals for the Sixth Circuit has summarized the standard for summary judgment as follows:

> Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. "The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial."

*Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411-12 (6th Cir. 2008) (internal citations omitted).

### III. Analysis

#### A. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff's claims are barred because Plaintiff did not properly exhaust his administrative remedies before filing this lawsuit. (Defs.' Br. 20). Specifically, Defendants contend that Plaintiff's grievance is not specific enough because it does not involve either Defendant in this case. (Defs.' Br. 21). Defendants further argue that the grievance was untimely. (Defs.' Br. 22).

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust available administrative remedies before filing a lawsuit. *Jones v. Bock*, 549 U.S. 199, 221 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. MDOC requires grievances to be quite specific. Under Policy Directive No. 03.02.130, plaintiff was "explicitly required to name each person against whom he grieved." *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009). In addition, his grievance was required to provide "the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be provided." Policy Directive 03.02.130; see *Vandiver v. Correctional Med. Services*, 326 F. App'x 885, 888 (6th Cir. 2009).

In 2007, Plaintiff filed a grievance in which he alleged that MDOC Director Patricia Caruso, Deputy Direct Dennis Straub, and Defendants Radwan Mardini and Dave Burnett "refuse[d] to

4

permit [him] to practice [his] faith in accordance with my rights and beliefs." (Am. Compl. Ex. E, 10/3/07 Grievance). With respect to the facts of the issue being grieved, Plaintiff stated that he is barred from properly observing his religious rituals, holidays and laws and cannot possess religious items necessary to the proper observance of his faith. (Id.) Plaintiff further stated, "I am denied the right to gather with fellow Shi'a Muslims for religious service and study and am told to either 'practice with the Sunni's (whose doctrine is drastically different than our and considered heretical) or go without.'" (*Id*.)

Defendants' argument that the grievance does not involve either Defendant is unavailing. Plaintiff specifically names each Defendant in his grievance. Moreover, Defendants cannot rely on the alleged untimeliness of Plaintiff's grievance because they did not deny it as untimely. Instead, Plaintiff's grievance was investigated and was denied on the merits. (Am. Compl. Ex. E, 10/3/07 Grievance). Plaintiff then appealed the grievance denial through Steps II and III of the grievance process. (*Id*.)

Defendants argument that the grievance does not involve either Defendant is also unpersuasive. Plaintiff specifically names each Defendant in his grievance. In addition, Plaintiff's grievance contains specific facts regarding the "who, what, when, why and how" of his complaint against the Defendants. Plaintiff's grievance and the fact that he pursued his grievance through the grievance appeal process shows that Plaintiff properly exhausted his administrative remedies, as required by the PLRA. Defendants are not, therefore, entitled to summary judgment based on failure to exhaust administrative remedies.

**B. Statute of Limitations**

Defendants also argue that summary judgment is warranted because Plaintiff's claim is barred by the statute of limitations. (Defs.' Br. 22). Defendants contend that the applicable statute of limitations is three years, and Plaintiff's complaint, which was filed on September 15, 2008, was filed after the three-year limitation period expired. (Defs.' Br. 22-23). Defendants assert that the statute of limitations period started tolling after Defendant Burnett issued a September 2, 2005 memorandum, which Plaintiff states is "central to his complaint." (Defs.' Br. 23).

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *See Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). Three years is the relevant statute of limitations under Michigan law. *See* Mich. Comp. Laws Ann. § 600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir.1986). State statutes of limitations apply to § 1983 actions, however, federal law determines when those claims accrue. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir.1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984). "[T]he statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer*, 98 F.3d at 220 (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991)).

Plaintiff's constitutional claims are not time-barred, at least not under the theory forwarded by Defendants.[1] In his complaint, Plaintiff relies on a September 2, 2005 memorandum issued by Defendant Burnett, in which Burnett denied Plaintiff's request to have Shia Islam recognized as a

---

[1]Plaintiff alleges in his complaint that his religious practice has been restricted throughout his incarceration. "In his 20 years of imprisonment he has always been restricted from practicing his Shia faith by prison regulation 05.03.150, and put under substantial pressure to modify his behavior and violate his Shia beliefs." (Am. Compl. p. 3). Defendants, however, did not raise an argument related to this allegation, therefore the court will not address it.

6

distinct religious organization.  (Am. Compl. p. 1-3).  Plaintiff alleges that Burnett's decision, memorialized in the 2005 memorandum, prevented him fully practicing his religion because it denied Shia Muslims the right to hold separate groups services, meetings or prayer groups. (Am. Compl. p. 3).  Plaintiff, therefore, knew on September 2, 2005 that his religious rights were being infringed, and, without tolling, he had until September 2, 2008 to file the instant lawsuit. Nonetheless, Plaintiff instituted a grievance related to Burnett's 2005 grievance in 2007, which tolled the statute of limitations.  *See Waters v. Evans*, 105 Fed. Appx. 827, 829 (6th Cir. 2004) (unpublished) (holding that the statute of limitations applicable to a prisoner-initiated § 1983 suit is tolled while the plaintiff exhausts available state remedies); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) (remanding a case to the district court when the record did not reveal when the period of exhaustion expired).  MDOC did not deny Plaintiff's grievance as untimely when he filed it and, as explained above, may not now claim that it was untimely.  Thus, the court concludes that Plaintiff's 2007 grievance tolled the statute of limitations and Plaintiff's complaint was timely.

### C. Plaintiff's Claims Against Defendant Mardini

Defendant Mardini argues that he is entitled to summary judgment because Plaintiff has not shown that Chaplin Mardini had any personal involvement in the alleged constitutional violations. (Defs.' Br. 2).  Chaplin Mardini argues that Plaintiff cites no examples of unconstitutional conduct that he committed, he has no knowledge of the issues Plaintiff raises in his complaint, and notes that Plaintiff was never incarcerated at the prison where Chaplin Mardini is employed.  (Defs.' Br. 2-3).

To prevail on § 1983 claim, a plaintiff must show personal involvement by the defendant in the constitutional violation. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995) (per curiam). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v.*

*Knight*, 532 F.3d 567, 575 (6th Cir. 2008).

Plaintiff mentions Chaplin Mardini in his complaint in reference to MDOC's decision that religious items Plaintiff wants to possess are not fundamental to his religious practice. (Am. Compl. p. 9). "These items are not allowed by Defendants, Plaintiff's expense, because they have determined that they are not fundamental to the practice of Al-Islam. Defendants arrived at this conclusion by speaking to MDOC employee [sic] Mardini and Isa Basir." (Am. Compl. p. 9). Thus, Plaintiff only accuses Chaplin Mardini of advising MDOC regarding the religious necessity of the items at issue. Chaplin Mardini is not accused of deciding that Plaintiff cannot possess the religious items. Chaplin Mardini, therefore, was not an active participant in the allegedly unconstitutional behavior; namely the decision to prohibit Plaintiff from obtaining and possessing certain religious items. At best, he was a religious consultant. However, because Chaplin Mardini did not make the decision to prohibit the religious items Plaintiff requested, he was not an active participant in the allegedly unconstitutional behavior. Accordingly, the court recommends that summary judgment be entered on behalf of Chaplin Mardini.

### D. Plaintiff's First Amendment Claims Against Burnett

Defendant Burnett first argues that he is entitled to summary judgment on Plaintiff's free exercise claim based on failing to provide a separate group service for Shi'a Muslims because: 1) Burnett was not responsible for modifying MDOC policy to provide only one group service for Muslim prisoners; 2) Plaintiff has access to a Jumu'ah prayer service; and 3) Plaintiff has access to Shi'a religious materials and clergy. (Defs.' Br. 6). Burnett also argues that summary judgment is appropriate on Plaintiff's religious diet claim because Plaintiff has access to a vegetarian option at every meal, the cost of Halal meals is prohibitive, and there is no vendor for Halal meats. (Defs.'

8

Br. 7-8).  Burnett further argues that he is entitled to summary judgment on Plaintiff's religious property claim because Plaintiff does not explain why he needs to possess the religious items he requested.  (Defs.' Br. 8-9).  Lastly, Burnett argues that summary judgment should be entered on Plaintiff's religious holiday claim because, other than state holidays, MDOC does not make special accommodations for religious holidays.

To establish that his right to free exercise of religion has been violated, Plaintiff must show that: 1) the belief or practice he seeks to protect is religious within his own "scheme of things;" 2) that his belief is sincerely held; and 3) the defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir.1987).  Only if the prisoner makes this threshold showing of a sincerely held religious belief will the court consider "whether the challenged practice of the prison officials infringes on the religious belief"; and "whether the challenged practice of the prison officials furthers some legitimate penological objective." *Kent*, 821 F.2d at 1224-25.

With respect to Plaintiff's free exercise claim based on the denial of Shi'a group services, Defendant Burnett does not contest the sincerity of Plaintiff's religious beliefs.  Instead, Defendant Burnett seeks summary judgment on the ground that he did not actively participate in the decision to hold only one Muslim service and there are legitimate penological reasons for holding a single Muslim service.  Defendant's assertion regarding his lack of participation in the decision to hold one Muslim service is somewhat disingenuous. Although Burnett may not have instituted the MDOC policy at issue in this case, PD 05.03.150, it appears from his September 5, 2005 memorandum that Burnett was involved to some extent in MDOC's review, and ultimate denial, of the request for group services for Shi'a Muslims.  At minimum, there is a factual question that exists regarding whether Burnett was personally involved in the alleged constitutional violation. *See Copeland*, 57

F.3d at 481.

Nonetheless, Plaintiff cannot avoid summary judgment on his group religious service claim because he failed to show that the policy is not reasonably related to a legitimate penological objective. With respect to Burnett's argument that the prison policy is reasonably related to a legitimate penological objective, the court finds that Burnett has shown that a relationship exists. A prison regulation that restricts a constitutional right is valid if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 84 (1987). To make this determination, a court must balance the following four factors:

> 1. whether a valid, rational connection between the prison regulation and the legitimate governmental interest exists;
> 2. whether there are alternative ways for the prisoner to exercise the implicated constitutional right;
> 3. what impact would accommodation of the implicated constitutional right have on the prison administration; and
> 4. whether the regulation is an exaggerated response to prison concerns.

*Id.*

Here, Burnett avers that allowing every religious sect to conduct separate group religious services, including Jumu'ah, would put an undue strain on MDOC's already limited resources. (Defendants' Ex. A, Burnett Aff. ¶ 5). Burnett further states that MDOC does not have the staffing, time, space and financial wherewithal to hold separate religious services. (Burnett Aff. ¶ 5). In addition, Plaintiff has an alternative way to exercise his right to practice his religion: he may participate in the Al-Islam group service, which is a general, inter-denominational Islamic service, and attend Friday night prayer service, Jumu'ah. The court notes that the MDOC does not hold separate services for the different Christian sects; only a Protestant Christian group service is held each week. (Burnett Aff. ¶ 4). To force the MDOC to hold separate services and prayer groups for

Shi'as and Sunnis would also necessitate separate services for the different denominations of Christianity. This would undoubtedly strain the MDOC unnecessarily, and would negatively impact prison administration. Lastly, there is no evidence that the regulation is an exaggerated response to prison concerns. The regulations are well-tailored to the space, staff, time and financial constraints of the MDOC and serves the legitimate penological objective of efficient use of resources. For these reasons, the court recommends the entry of summary judgment on Plaintiff's group religious service and Friday prayer claims.

Next, Burnett argues that he should be granted summary judgment on Plaintiff's religious diet claim. Again, Burnett does not dispute that Plaintiff's beliefs are sincerely held. Burnett does, however, contend that Plaintiff has not shown that eating Halal meat is a fundamental requirement of his religion and argues that Plaintiff's religious diet restrictions are accommodated with a vegetarian option at each meal. (Defs.' Br. 7l Burnett Aff. ¶ 8). Further, Burnett states that providing Halal meals costs double that of regular meals and he avers that there is no Halal meat vendor. (Burnett Aff. ¶ 8).

Plaintiff claims that a Halal, or lawful, diet is a central tenet in Islam. However, Plaintiff has not shown that eating Halal *meat* is a fundamental requirement in his religion. Rather, the evidence Plaintiff has provided shows that if he eats meat, it must be slaughtered according to certain religious strictures. (Am. Compl. Ex. H, Al-Sahlani Aff.).

Nonetheless, Burnett has not definitely shown that the alternative way for Plaintiff to exercise his religion, i.e. by eating vegetarian fare, is an acceptable alternative under Islam. Burnett has not definitively shown that the vegetarian fare served in MDOC prisons is Halal. *See Turner*, 482 U.S. at 84. In his amended complaint, Plaintiff alleges that cross-contamination between the

11

vegetarian and non-vegetarian food items occurs.  (Am. Compl.  p. 7-8).  "Generally, vegetarian dishes are halal unless they have been otherwise contaminated, such as coming into contact with haram (unlawful) foods or being cooked or served in containers that have been in contact with haram foods without [sic] properly cleaned.  Such cross-contamination renders the halah [sic] foods haram."  (Am. Compl. p. 8).  Plaintiff has observed instances of cross-contamination.  (Compl. p. 8).  Indeed, Burnett has not refuted Plaintiff's allegation that the vegetarian fare is haram due to cross-contamination.  Thus, a factual question remains as to whether the vegetarian meals offered at MDOC prisons are Halal and may be lawfully consumed by Plaintiff in accordance with his religion.

With respect to the last two factors of the *Turner* test, the impact on prison administration and whether the prison's response is exaggerated, Burnett has not offered evidence that preventing cross-contamination is cost prohibitive.  In addition, the court finds Burnett's assertions that Halal meat is cost prohibitive and that MDOC cannot find a Halal meat vendor dubious.  It is well-known that MDOC provides Kosher meals to Jewish inmates, meals which also cost more than a standard prison meal.  Moreover, Michigan has the largest population of Muslims in the United States.  The court is, therefore, unwilling to accept Burnett's statement, on this record, that MDOC cannot find a Halal meat vendor, without evidence verifying this claim.  These statements appear to be exaggerated responses by the MDOC.  Therefore, factual questions exist regarding the ability of MDOC to prevent cross-contamination, whether Halal meat is cost prohibitive, and the availability of a Halal meat vendor and whether the meal is a fundamental tenet of the religion.

Defendant Burnett has failed to show the absence of a fact dispute with respect to Plaintiff's First Amendment religious diet claim.  Factual questions pertaining to all four of the *Turner* factors

remain.  Accordingly, the court recommends that summary judgment be denied on Plaintiff's First Amendment religious diet claim.

Burnett also contends that he is entitled to summary judgment on Plaintiff's religious property claim because Plaintiff has not explained why he needs to possess a Miswak Stick, Attar (prayer oil), an Aqiq ring, a keffiyeh head scarf, and a prayer tablet.  (Defs.' Br. 8).  In order to prevail on a free exercise claim, Plaintiff must show, among other things, that the belief or practice he seeks to protect is religious within his own "scheme of things.  *Kent*, 821 F.2d at 1224-25.

In Plaintiff's Amended Complaint, he alleges that the items he has requested are "central to the practice of his faith."  (Compl. p. 8).  Plaintiff further alleges that he is required by his faith to "abide by the Sunna (practices) of the Prophet of God, Muhammed (peace be upon him), and by his Holy Household the 12 Imams (peace be upon them all)."  (Compl. p. 9-10).  Plaintiff explains that the Miswak Stick was a practice of Muhammad and the "Holy Imams" and he is required to use the stick to clean his mouth before the five daily prayers.  (Compl. p. 10).  Plaintiff states that Attar is used to make adherents smell good for God when they are praying to him.  (Compl. p. 10).  Also, the Aqiq ring is a reminder to Shi'as of their faith and "the sacrifice of all the pervious [sic] Shia who kept their religion from being over-taken."  (Compl. p. 10).  Lastly, Plaintiff explains that the keffiyeh head scarf is worn over the kuffi cap during prayer, or all day long to remind the adherent of God and, also, that he has a duty to pray on a clay tablet made from clay from Karbela, Iraq, where Imam Hussien was martyred.  (Compl. p. 10).

Plaintiff's claim is sufficiently explained to withstand a motion for summary judgment at this stage.  As the case goes forward, Plaintiff's explanation, which is clearly self-serving, will need to be supported by appropriate evidence.  Therefore, the court recommends that summary judgment

be denied on Plaintiff's religious property claim.

Lastly, Burnett argues that summary judgment should be granted on Plaintiff's religious holiday claim. (Defs.' Br. 9). Burnett states that the MDOC does not make special accommodations for religious holidays, other than state holidays, and treats all faiths equally by not making any exceptions for religious holidays. (Defs.' Br. 10). Plaintiff, however, alleges in his complaint that "Defendants by regulation recognize 18 major Jewish ceremonies, half of which require special meals." (Compl. p. 12). Burnett did not refute Plaintiff's allegation, nor did he provide evidence showing that Plaintiff's allegation is unfounded. Burnett, therefore, did not overcome the evidentiary burden to warrant summary judgment. A factual question as to whether Jewish holidays are accommodated in MDOC prisons exists, and summary judgment should not be entered on Plaintiff's religious holiday claim.

### E. Plaintiff's Equal Protection Claim

Defendants move for summary judgment on Plaintiff's Equal Protection claim on the ground that Plaintiff's allegations of an equal protection violation are conclusory. (Defs.' Br. 15). Defendants also argue that Plaintiff has not provided any evidence that Shi'a Muslims are treated differently from other groups, and Plaintiff's statements to the contrary are incorrect. (Defs.' Br. 16). Defendants further state that Plaintiff is afforded the opportunity to fast during Ramadan and attend weekly Jummu'ah services, and contends that the fact that Shi'a Muslims are not afforded separate religious services is not discriminatory. (Defs.' Br. 16).

The problem with Defendants argument is that it does not address Plaintiff's allegations of a equal protection violation. In Plaintiff's Amended Complaint, he alleges:

> Plaintiff also has an equal protection claim in his religious dietary requirements in
> that he is treated differently from the Jewish and Buddhist dietary food line, who are

14

similarly-situated, and such treatment is based upon either a suspect classification, or lack there of, or a fundamental right.  (Exhibit- B, C, D, & I) Defendants claim that they have no vendor for Halal meat, because they have never needed a vendor. They do not recognize the proper Halal diet.  Further, Michigan has numerous Halal vendors, and a Halal state law.  Secondly, the cost of Halal meat being twice the costs of normal meal is based on conjecture.  The Defendants have never done a cost analysis.  They claimed the same thing for the Kosher and Buddhist diet lines and were found to have misled on cost.  (Exhibit- J).

(Am. Compl. 8).

The above cited paragraph contains all of Plaintiff's equal protection allegations.  Contrary to Defendants' arguments for summary judgment, Plaintiff did not allege equal protection violations based on the MDOC's treatment of Shi'a Muslims prisoners during Ramadan or MDOC's policy on group religious services. Because none of Defendants' arguments pertain to Plaintiff's allegation of an equal protection violation based on different accommodations for religious dietary needs, Defendants are not entitled to summary judgment on Plaintiff's equal protection claim.

### F. Injunctive Relief

Defendants argue that Plaintiff is not entitled to prospective injunctive relief because he has not shown a continuing violation of constitutional law.  (Defs.' Br. 17).  This court has concluded that Defendant Burnett is not entitled to summary judgment on Plaintiff's religious diet, property, and holiday free exercise claims and Plaintiff's equal protection claim.  Accordingly, denying Plaintiff injunctive relief would be preemptive at this time.

### G. Sovereign and Qualified Immunity

Defendants first argue that Plaintiff's claims against them in their official capacities are barred by sovereign immunity.  (Defs.' Br. 17).

The Eleventh Amendment bars a suit brought in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally

15

consented to be sued. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 (1984); *Abick v. Michigan*, 803 F.2d 874, 876-77 (6th Cir. 1986). Lawsuits against prison officials in their official capacities are barred if the suit seeks retroactive relief, such as money damages. *Doe v. Widdington*, 21 F.3d 733, 737 (6th Cir. 1994). However, plaintiffs may bring lawsuits against prison officials in their official capacities if they seek prospective relief, i.e. relief that compels the state officer's compliance with federal law in the future. *Id.*

Here, Plaintiff seeks a declaration that Defendants have violated Plaintiff's religious rights and an injunction barring Defendants from violating his religious rights in the future. (Am. Compl. 14). Plaintiff, therefore, seeks prospective relief, and his claims against Defendants in their official capacities should not be dismissed based on sovereign immunity.

Defendants also argue that they are entitled to dismissal of Plaintiff's claims against them in their individual capacities because Plaintiff has "failed to plead facts sufficient to describe any unconstitutional conduct by Defendants." (Defs.' Br. 19). State employees who are sued in their individual capacities are not liable for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Causey v. Bay City*, 442 F.3d 524, 528 (6th Cir.2006) (internal quotation marks omitted). In considering an assertion of qualified immunity, the court must decide: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Here, Defendants argue that Plaintiff has not pleaded facts sufficient to establish a constitutional violation. As discussed above, this court disagrees. There are factual questions as

16

to whether Defendant Burnett violated Plaintiff's right to free exercise and right to equal protection. Accordingly, Defendant Burnett is not entitled to summary judgment on the basis of qualified immunity. Defendant Chaplin Mardini is entitled to summary judgment based on qualified immunity because, as discussed above, Plaintiff did not allege that Chaplin Mardini was personally involved in the alleged unconstitutional conduct. *See supra.*

**IV. Conclusion**

For the reasons discussed above, the court recommends that Defendants' motion for summary judgment (Doc. No. 41) be **GRANTED IN PART** and **DENIED IN PART**. Summary judgment should be entered in favor of Defendant Mardini and Plaintiff's claims against him should be dismissed. Also, summary judgment should be entered in favor of Defendant Burnett on Plaintiff's free exercise claim based on his allegations related to group religious services. At present, Defendant Burnett is not entitled to summary judgment on any of Plaintiff's other claims.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen(14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

17

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: December 21, 2009

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on December 21, 2009.

s/J. Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan