UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALI SAREINI,

        Plaintiff,

                                      Case Number 08-13961-BC
                                      Honorable Thomas L. Ludington

v.

DAVE BURNETT,

        Defendants.
_____/

**ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, OVERRULING IN PART AND SUSTAINING IN PART DEFENDANT'S OBJECTIONS, GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFF'S RELIGIOUS PROPERTY CLAIM, DISMISSING PLAINTIFF'S RELIGIOUS HOLIDAY BANQUET CLAIM UNDER THE FREE EXERCISE CLAUSE, AND DISMISSING PLAINTIFF'S EQUAL PROTECTION CLAIM**

Plaintiff Ali Sareini, a Shia Muslim, has been incarcerated with the Michigan Department of Corrections ("MDOC") since 1989 as a result of a second-degree murder conviction for which he received a life sentence. Plaintiff is currently incarcerated in the Newberry Correctional Facility in Newberry, Michigan. Plaintiff originally filed his complaint on September 15, 2008, purporting to represent a class of prisoners and alleging that Defendant Dave Burnett and Defendant Radwan Mardini violated the class members' rights under the Free Exercise Clause of the First Amendment to the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000 et seq. [Dkt. #1]. Magistrate Judge Virginia M. Morgan recommended dismissing Plaintiff's complaint on May 13, 2009, because Plaintiff, who was proceeding pro se, could not adequately represent a class [Dkt. #32]. Plaintiff was granted leave to file an amended complaint, and an

amended complaint alleging the same causes of action was filed on May 27, 2009 [Dkt. #33]. In his amended complaint, Plaintiff generally contends that Defendants are unwilling to accommodate a separate religious group service for Shia Muslim prisoners, that they have refused to provide Plaintiff Halal meals, that Plaintiff has not been permitted to possess religious items central to his faith, and that Defendants have denied Plaintiff the opportunity to observe religious holidays. Plaintiff's claims arise out of a series of events during his 20 years of incarceration in the Michigan prison system.

More specifically, Plaintiff alleges that the MDOC has restricted the practice of his faith by refusing to recognize Shia Islam as a separately identifiable religious group and to permit them to hold separate religious services. Plaintiff further alleges that Defendant has refused to provide him with Halal[1] meals even though the MDOC provides Kosher meals to Jewish inmates. Plaintiff has also been denied admission into the Kosher meals program.[2] Finally, Plaintiff asserts that Defendant

---

[1]According to the Islamic Food and Nutrition Council of America (IFANCA) and Islamic Services of America (ISA), a "Halal," or "lawful" diet, prohibits items deemed "haram" (or "unlawful"), including pork and its by-products, animals improperly slaughtered or killed, alcohol and intoxicants, blood and blood by-products, and foods contaminated with haram products. *See* Islamic Food and Nutrition Council of America ("IFNCA"), *What is Halal*?, http:// www.ifanca.org/ halal/ (last visited March 23, 2011); Islamic Services of America ("ISA"), What is Halal?, http:// www.isaiowa.org/content.asp?ID=1677 (last visited March 23, 2011). Food containing gelatin, enzymes, and emulsifiers are questionable because of their unclear origins; they may be Halal or haram. *See* IFANCA, *What is Halal?;* ISA, *What is Halal?*. Organizations such as IFANCA and ISA offer a certification procedure, by which Halal products are marked with a logo that confirms their Halal status. *See* IFANCA, *About IFANCA*, http://www.ifanca.org/about/ (last visited March 23, 2011); ISA, *The Certification Process*, http://www.isaiowa. org/content. asp?ID=1680 (last visited March 23, 2011).

[2]Plaintiff does not explain why he applied for the Kosher meals program and also does not assert in his complaint that Kosher is Halal. *See* IFANCA, *Why Kosher is not Halal*, http://www.isaiowa.org/ Content/Halal-Information/Halal-Education/Why-Kosher-is-not-Halal.aspx (last visited March 23, 2011) (explaining the differences between Kosher and Halal).

will not let him maintain religious items that are central to the practice of his faith, including the Miswak Stick, Attar (prayer oil), an Aqiq ring, a keffiyeh head scarf, and a prayer tablet.

# I

## A

The Court adopted a prior report and recommendation authored by Magistrate Judge Virginia M. Morgan addressing Defendant's second motion for summary judgment [Dkt. #43] on January 22, 2010 and dismissed Plaintiff's claims against defendant Radwan Mardini, Huron Valley Correctional Facility's chaplain. Neither Plaintiff nor Defendant filed any objections to Judge Morgan's report and recommendation. The Court also adopted Judge Morgan's recommendation to grant summary judgment in favor of Defendant Burnett on Plaintiff's free exercise claim. Plaintiff's claim, which sought a separate group service for Shia Muslims was dismissed because Plaintiff was unable to demonstrate that the MDOC's policy was not reasonably related to a legitimate penological objective. As a result, the remaining claims were Plaintiff's allegation that Defendant refused to provide Plaintiff with a Halal diet, his claim that Defendant would not allow Plaintiff to posses certain religious property items, his claim that the MDOC accommodates Jewish holidays but does not accommodate Muslim holidays, and his claim that the MDOC violated the Equal Protection Clause by providing religious diets to Jewish and Buddhist prisoners and not to Muslim prisoners.

## B

### 1

This matter is now before the Court on a report and recommendation regarding Defendant's third motion for summary judgment [Dkt. #64] issued by Judge Morgan on December 23, 2010 [Dkt.

#66]. Defendant's third motion for summary judgment seeks dismissal of the same claims challenged in his second motion for summary judgment [Dkt. #41]. E.D. Mich. Local Rule 7.1 provides that a party must obtain leave of court to file more than one motion for summary judgment. Defendant did not seek leave of the Court before filing his third motion for summary judgment.[3]

Judge Morgan decided to address Defendant's third motion for summary judgment however, and recommended that summary judgment be granted as to Plaintiff's religious property claim but denied as to the remaining claims. In his motion, Defendant analyzed Plaintiff's complaint as though it was an application for a preliminary injunction. Plaintiff, however, is not seeking a preliminary injunction. He seeks a permanent injunction as the concluding remedy on the merits of his case. Judge Morgan thus properly applied the summary judgment standard under Federal Rule of Civil Procedure 56 when addressing Defendant's motion in the remainder of her analysis.

Judge Morgan concluded that a factual question remains concerning Plaintiff's complaint that meat and non-meat items have been cross-contaminated despite Defendant's proffer of additional evidence to the contrary. Judge Morgan's most recent conclusion is consistent with her conclusion in her report and recommendation on Defendant's second motion for summary judgment. Judge Morgan does, however, recommend that Plaintiff's religious property claim be dismissed because he has not advanced any evidence to contradict Defendant's affidavit of the prison chaplain which explains that the enumerated items are not essential to the practice of Plaintiff's religion.

---

[3]Although Defendant did not seek leave to file his second motion for summary judgment, that motion was properly filed as Judge Morgan recommended denying the first motion for summary judgment [Dkt. #12] without prejudice because it was based on the purported class action complaint which was subsequently dismissed. Judge Morgan recommended denying both parties motions for summary judgment without prejudice and allowed the parties to refile their respective motions. The Court adopted the report and recommendation on July 30, 2009 [Dkt. #32].

Judge Morgan also recommends denying summary judgment on Plaintiff's religious holiday claim. Judge Morgan found that Defendant did not provide any evidence to support his assertion that the MDOC needed to limit the number of inmate banquets. Instead she found that Defendant argued, unpersuasively and without evidentiary support, that allowing religious banquets other than the Passover Seder would create "chaos" and "require staff to monitor and organize every banquet," which would result in diverting already scarce resources away from the core function of providing safety and security for all prisoners. [Dkt. #66 at 7; Dkt. #67 at 3].

Finally, Judge Morgan recommends denying summary judgment on Plaintiff's equal protection claim because Plaintiff has identified a legitimate factual assertion that the MDOC policies infringe on his religious rights. Judge Morgan concluded that the MDOC policies may be unreasonable when similar religious accommodations are made for other religious practices but not for Plaintiff. Defendant contends that the rational basis standard of review should apply to Plaintiff's equal protection claim. Defendant, however, acknowledges that similarly situated Jewish prisoners are accommodated by the MDOC. As a result, Judge Morgan concluded that the strict scrutiny standard of review applies in the instant case because the government classification is based on religion or burdens the exercise of a religious practice.

**2**

Plaintiff filed an objection to the report and recommendation on January 3, 2011 [Dkt. #69]. Defendant also filed an untimely objection on January 10, 2011 [Dkt. #67] and Plaintiff filed a response to Defendant's objection on January 18, 2011 [Dkt. #68]. For the reasons explained below, the Court will overrule Plaintiff's and Defendant's objections, adopt Judge Morgan's report and recommendation, grant in part and deny in part Defendant's motion to for summary judgment, and

dismiss Plaintiff's religious property claim with prejudice.

**II**

**A**

Plaintiff has made seven objections to the magistrate judge's report and recommendation. Each will be discussed separately below.

**1**

Plaintiff first objects to Judge Morgan addressing Defendant's third motion for summary judgment. As noted above, Defendant's third motion for summary judgment advances arguments that are nearly identical to the arguments advanced in his second motion for summary judgment. Our Local Rules require leave to file a subsequent motion for summary judgment as previously noted. The Court's docket does not reflect any response from Plaintiff opposing the third motion for summary judgment. Judge Morgan decided, as is within her discretion, to address Defendant's third motion in the interest of further narrowing trial issues. Plaintiff's first objection will thus be overruled.

**2**

Plaintiff's second, third, fifth and sixth objections are directed to Judge Morgan's conclusion that his religious property claim should be dismissed because he has not advanced evidence to contradict the affidavit of the prison chaplain which provides that the Miswak Stick, Attar (prayer oil), an Aqiq ring, a keffiyeh head scarf, and a prayer table are not essential to the practice of Plaintiff's religion. Chaplain Mardini bases his opinion on the MDOC's Religious Beliefs and Practices of Prisoners Policy, PD-05.03.150, which allows prisoners to possess personal property which are necessary to the practice of the prisoner's religion unless the item presents a threat to the

custody and security of the facility. The policy provides that the Miswak stick, Attar oil, aqeeq ring, and prayer tablet area not mandatory for Shia worship, and that the keffiyeh head scarf is not a required piece of clothing for men throughout the day. Plaintiff argues that Chaplain Mardini is not a Shia Muslim and is thus not qualified to provide an opinion as to the religious items required to practice Plaintiff's religion. Plaintiff also emphasizes that Chaplain Mardini does not identify any clergy he consulted or religious literature he read in coming to the conclusion that Plaintiff's requested items are not essential to the practice of Plaintiff's religion. Plaintiff further asserts that "[p]rison chaplains are not the arbiters of the measure of religious devotion that prisoners may enjoy or the discrete way they may practice their religion." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 333 (5th Cir. 2009).

Plaintiff contends that he has identified religious literature that refutes Chaplain Mardini's claims. Although Plaintiff does not identify his references to religious literature, Plaintiff did provide an exhibit which he signed as being "attested to [sic]"[4] in his response to Defendants' first motion for summary judgment [Dkt. #15]. The exhibit references literature that explains why the Miswak Stick, Attar (prayer oil), an Aqiq ring are central to the practice of his faith to establish his claim. Plaintiff must demonstrate, "as a threshold matter, that there is a substantial burden on his ability to exercise his religion" without these religious items. *Singson v. Norris*, 553 F.3d 660, 662 (8th Cir.2009) (citation and quotation omitted). To constitute a "substantial burden," the policy must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs and must meaningfully curtail a person's ability to express adherence to his or her faith or must deny a person reasonable opportunities to engage in those

---

[4]Plaintiff was presumably intending to provide a sworn statement through his exhibit.

activities that are fundamental to a person's religion. *Gladson v. Iowa Dep't of Corrections*, 551 F.3d 825, 832 (8th Cir. 2009). However, "a rule or regulation that makes the practice of a prisoner's religion somewhat more difficult, but which has no tendency to coerce him into acting contrary to his religious beliefs does not constitute a substantial burden." *Berryman v. Granholm*, No. 06-cv-11010, 2007 WL 2259334, at *10 (E.D. Mich. Aug. 3, 2007).

Although Plaintiff's "attested to" exhibit explains why the items he requests are desirable for practicing his religion, he has not demonstrated that he would be unable to adhere to his faith or that his faith would be significantly inhibited without these items. The exercise of Plaintiff's religion may be more difficult without the items, but he is not compelled to act contrary to his religious beliefs. *See Berryman*, 2007 WL 2259334, at *10. As a result, Plaintiff's objection to Judge Morgan's recommendation to dismiss of his religious property claim will be overruled.

**3**

In the event his previous objection to the dismissal of his religious property claim was sustained, Plaintiff also provides an objection to Defendant's contention that the MDOC has an interest in restricting the amount of property each prisoner possesses. Plaintiff emphasizes that the items he requests are small enough to fit into a legal-sized envelope. The prison's policy prohibits inmates from possessing property any larger than that which could fit into a military style duffel-bag or a foot locker. Plaintiff contends that other inmates have been allowed to posses televisions, guitars, radios, and other large items yet he has been denied religious items that are within the restrictions imposed by the property policy. Judge Morgan recommended dismissing Plaintiff's religious property claim because the evidence Plaintiff provided was insufficient to propel his claim past summary judgment and thus did not address Defendant's argument that the MDOC has a

legitimate penological interest in restricting the amount of property a prisoner possesses. The Court, however, agrees with Judge Morgan's recommendation discussed in Section II.A.2. For Plaintiff's clarity, his religious property claim is not being dismissed because of the size of the property or the MDOC's interest in restricting the amount of property each prisoner possesses. Plaintiff's objection will thus be overruled.

**4**

Plaintiff's fourth objection is to the adequacy of a vegetarian Halal diet. Judge Morgan recommends denying Defendant's motion for summary judgment on Plaintiff's religious diet claim because Defendant had not provided evidence refuting Plaintiff's allegation of cross-contamination of the vegetarian food items. Judge Morgan concluded that a vegetarian diet qualifies as a Halal diet based on the allegations in Plaintiff's amended complaint. (Am. Comp. p. 7-8 ("Generally, vegetarian dishes are [H]alal unless they have been otherwise contaminated, such as coming into contact with haram (unlawful) foods or being cooked or served in containers that have been in contact with haram foods without [being] properly cleaned.").) Judge Morgan further concluded that Plaintiff had demonstrated a factual question concerning whether Defendant caused the vegetarian food to be cross-contaminated. More specifically, Plaintiff argues that the non-meat substitute the MDOC provides is insufficient because he prefers to eat meat but that the meat he prefers must also meet his religion's slaughtering requirements. Plaintiff may prefer Halal meat entrees over the vegetarian and non-meat substitutes provided, but his food preferences, as a prisoner, may be limited. *Hudson v. Caruso*, No. 10-cv-58, 2010 WL 3610183, at *8 (W.D. Mich. Sept. 14, 2010); *see also Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) (finding that "the Constitution does not mandate comfortable prisons"). Plaintiff does not challenge Judge Morgan's conclusion that

vegetarian or non-meat options would provide a Halal diet. Accordingly, Plaintiff's objection will be overruled.

**5**

Plaintiff's final objection is subsumed in a general statement that he has shown that the claims he alleges are current and former practices in Defendant's prison. He asserts Defendant's "penological legitimacy defense" has no merit and is only intended to distract the Court. The Court is unable to understand his assertion to be a specific objection to Judge Morgan's report and recommendation, and this objection will be overruled.

**B**

Defendant has made three objections to the magistrate judge's report and recommendation. Each will be discussed separately below.

**1**

Defendant first objects to Judge Morgan's conclusion that he has not provided sufficient evidence addressing Plaintiff's contention that the non-meat entree he has been provided has been cross-contaminated. Defendant concedes for the purposes of this motion that cross-contamination may have occurred at Plaintiff's facility, but argues that the claim should be dismissed because he is not responsible for managing the facility where Plaintiff is incarcerated. He explains that he is not located at Plaintiff's facility but at the central MDOC office in Lansing. Defendant suggests that Plaintiff might have a cause of action against the individual who allowed the cross-contamination to occur. Defendant asserts that at the "macro level," the MDOC has a general policy of serving meat and non-meat dishes separately at its facilities throughout the state and this general policy is sufficient to entitle him to summary judgment. Defendant does not, however, offer any evidence

to suggest that the MDOC special activities coordinator is not responsible for ensuring that the policies regarding a prisoner's proper religious diet are observed.

Plaintiff responds that Defendant has not offered evidence to refute Plaintiff's assertion that as recently as January 10, 2011, Plaintiff witnessed cross-contamination of the vegetarian food at the "micro level" at his facility. Plaintiff has "a constitutional right not to be forced into a Hobson's choice of either eating food items which offend one's religious beliefs, or eating very little or not at all." *Norwood v. Strada*, 249 F. App'x 269, 272 (3d Cir. 2007). Here, Plaintiff has presented some evidence of cross-contamination of food at his facility and Defendant, in his former official capacity as the MDOC's Special Activities Coordinator, has conceded that cross-contamination may have occurred. Defendant also has not submitted any admissible evidence contradicting Plaintiff's assertion that the practice of cross-contamination occurs at his facility, resulting in Plaintiff not receiving the proper diet as requested pursuant to his religious beliefs. Accordingly, Defendant's first objection will be overruled and the Court will direct Defendant to substitute the current MDOC special activities coordinator as the proper defendant.

**2**

Defendant next "takes issue" with Judge Morgan's conclusion that he did not provide any evidence of MDOC's need to control the number of inmate banquets. Defendant argues that MDOC has a compelling governmental interest in restricting the number of banquets at each facility. According to Defendant, it should be self-evident to the Court that prison staff would have to organize and monitor the banquets and that doing so would reduce the resources for use in performing the core function of providing security and safety for prisoners. Plaintiff alleges in his complaint that Defendant recognizes more than eighteen Jewish holidays, half of which require

special meals. However, Defendant contends that Jewish Seder is the holy holiday accommodated, which is done so because of a court order[5] and should not therefore be a basis by comparison for providing Shia religious banquets. Defendant does not advance any evidence of the cost of accommodating Plaintiff's request or the cost of accommodating additional religious requests. Plaintiff further contends, on the other hand, that the MDOC allows banquets for other prisoner groups, and not just religious groups. Plaintiff also generally argues, that he could testify that no additional staff would be needed for the twenty or fewer prisoners who would be attending a Shia religious meal because there are at least 100 prisoners eating in the dining hall at any given time with supervising staff present.

Plaintiff, however, has not shown that the MDOC has intentionally discriminated against Shia Muslims but instead imposes banquet restrictions on every religious group with the court-ordered exception for Passover Seder. In effect, this is not discrimination based on the MDOC's conduct, but based on the conduct of the court in *Whitney*. There is no evidence in the record suggesting that Defendant accommodates other religious holiday banquet requests besides the Passover Seder that is court-ordered or that Plaintiff has been denied the ability to fast as necessary for his religion. Defendant's objection will, as a result, be sustained and Plaintiff's religious holiday banquet claim will be dismissed.

**3**

Defendant's third objection is to Judge Morgan's conclusion that a strict scrutiny standard applies to Plaintiff's equal protection claim because a suspect class is implicated by Defendant's treatment of different classes of people based on religion. Instead, Defendant contends that prison

---

[5]*Whitney et al. v. Brown et al.*, Case No. 86-CV-1529-DT.

regulations impinging on prisoners' religious rights are properly evaluated under the reasonableness standard set forth in *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (finding that in evaluating a prisoner's claims under the free exercise of religion clause of the First Amendment, prison regulations alleged to infringe on constitutional rights are judged under a "reasonableness" test that is less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights). Defendant also asserts that inmates are not a suspect class for equal protection analysis purposes and, as a result, a suspect class is not implicated in the instant case. *See Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005) (employing the rational basis standard of review because prisoners are not considered a suspect class and the challenged statute did not violate a fundamental right or otherwise make a suspect distinction). However, Judge Morgan concluded that a suspect classification was implicated because the distinctions MDOC has made between Jewish and Muslim prisoners are not based on their status as a prisoner. Where the government classification is based on religion, or burdens the exercise of religion, strict scrutiny applies. *Bowman v. United States*, 304 F. App'x 371, 378 (6th Cir. 2008). Thus, Defendant's third objection challenging the appropriate standard of review will be overruled.

Defendant further objects to Judge Morgan's conclusion that MDOC's policy to deny Halal meals to Plaintiff is narrowly tailored to a compelling government interest. Defendant emphasizes that the affidavit furnished by Brad Purves, the Acting Foodservice Program Manager for the Correctional Facilities Administration in Lansing, explains that Halal entrees would cost ten times the amount a vegetarian option costs and four times the amount of a Kosher entree based on his review of Halal vendors on the internet. Defendant asserts that cost is considered a compelling government interest in determining whether a party violated RLUIPA. *Turner v. Safley*, 482 U.S.

78, 89-90 (1987) (finding that when a prison regulation impinges on inmates' constitutional rights, regulation is valid if it is reasonably related to a legitimate penological interest which allows for consideration of whether there is a ready alternative to regulation that fully accommodates prisoners' rights at de minimis cost to valid penological interest). Because Halal meals are significantly more expensive and would affect the MDOC's competing objective of providing inmates with an adequate protein substitute at every meal, Defendant argues that MDOC's policy is narrowly tailored to meeting a compelling governmental interest.

"The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). However, it is not the case that "every religious sect or group within a prison-however few in number-must have identical facilities or personnel." *Graham v. Mahmood*, No. 05 Civ. 10071(NRB), 2008 WL 1849167, at *14 (S.D.N.Y. Apr. 22, 2008) (citing *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972)). Even if Plaintiff can demonstrate that two groups are similarly situated, different treatment might still be warranted if Defendant can demonstrate that the distinctions are "reasonably related to legitimate penological interests." *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990); *see also Turner*, 482 U.S. at 89. Furthermore, Plaintiff must show that the decision to serve Kosher meat entrees but not Halal meat entrees was motivated by intentional or purposeful discrimination. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003); *see also Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815-16 (8th Cir.2008) (concluding that prisoner's equal protection claim failed because he had not shown that the prison's decision to serve Kosher entrees and not Halal entrees was motivated by intentional or purposeful discrimination).

Although the record in this case contains no information regarding the number of inmates with varying religious affiliations who receive different treatment or of the comparative expense on prison resources of accommodating the various religious requirements, Plaintiff has not presented any evidence suggesting that Defendant acted with a discriminatory purpose or intent. Indeed, the evidence shows that the MDOC, although not a defendant in this case, reasonably believed that it had accommodated the needs of a Halal diet by providing vegetarian entrees with an adequate protein substitute. This demonstrates an intent to accommodate Plaintiff's religious beliefs, not to discriminate against Plaintiff on the basis of religion.

Moreover, Defendant has also shown that providing the Halal diet that Plaintiff seeks is too costly. If Plaintiff were to be provided this diet, so too would every Muslim prisoner and every other prisoner whose religion has strict dietary laws. The extra cost would not be limited to the facility in which the plaintiff is incarcerated but would be incurred statewide. If Halal meat entrees are to be prepared within the MDOC, the costs of keeping Halal foods separate from other foods would be significant. The MDOC would have to find food that have no traces of meat or alcohol, and keep those foods separate from the food of all other prisoners. Additionally, because Halal meat looks the same as regular meat, and the prison kitchen staffs are made up primarily of inmates with limited training, having both in the same kitchen or on the same serving line could lead to improper substitution of food items. There would also be additional administrative burdens. Halal meat, for example, would have to be ordered separately, brought in on different trucks, unloaded, handled and stored separately in the kitchens, and served separately. Separate kitchens would be needed, with separate staffing.

Defendant has demonstrated that not furnishing Halal meat entrees is the least restrictive

means of addressing Plaintiff's request. Plaintiff has not suggested any reasonable alternatives. Because the facts viewed in the light most favorable to Plaintiff do not establish that the MDOC's decision to serve Kosher entrees but not Halal meat entrees was the product of intentional discrimination, Defendant's third objection will be sustained and Plaintiff's equal protection claim will be dismissed.

### III

For the reasons discussed above, the Court will adopt in part and reject in part Judge Morgan's report and recommendation, resulting in Plaintiff's religious diet claim regarding cross-contamination of the vegetarian meal options remaining.

### IV

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [Dkt. #66] is **ADOPTED IN PART** and **REJECTED IN PART**.

It is further **ORDERED** that Plaintiff's objections [Dkt. #69] are **OVERRULED**.

It is further **ORDERED** that Defendant's objections [Dkt. #67] are **OVERRULED IN PART** and **SUSTAINED IN PART**.

It is further **ORDERED** that Defendants' motion for summary judgment [Dkt. #64] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff's religious property claim under the Religious Land Use and Institutionalized Persons Act, Plaintiff's religious holiday banquet claim under the free exercise clause of the First Amendment, and Plaintiff's equal protection claim under the Fourteenth Amendment are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that pursuant to Fed. R. Civ. P. 17(d) and Fed. R. Civ. P. 25(d), the current Michigan Department of Corrections Special Activities Director is **ADDED** as a party defendant, and no later than Friday, April 29, 2011 the Michigan Department of Corrections **SHALL FILE** with the Court, and provide to the plaintiff, the name and business address of the current Michigan Department of Corrections Special Activities Director.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 31, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Ali Sareini, #203519 , at Newberry Correctional Facility, 3001 Newberry Avenue, Newberry, MI 49868 by first class U.S. mail on March 31, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS